J-A27025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OTILIO COSME, | |
| Appellant | No. 1735 WDA 2014 |

Appeal from the Judgment of Sentence of October 9, 2014
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-CR-0000282-2013

BEFORE:  BOWES, OLSON & STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 14, 2015**

Appellant, Otilio Cosme, appeals from the judgment of sentence entered on October 9, 2014, following his guilty plea to involuntary manslaughter, 18 Pa.C.S.A. § 2504.  Upon review, we affirm.

We briefly summarize the facts and procedural history of this case as follows.  On March 17, 2013, the Commonwealth charged Appellant with criminal homicide, simple assault, recklessly endangering another person and harassment[1] as the result of an altercation wherein Appellant and his co-defendants beat a man to death.  On August 6, 2014, the Commonwealth entered into a plea agreement with Appellant wherein Appellant agreed to

---

[1] 18 Pa.C.S.A. §§ 2501, 2705, and 2709, respectively.

plead guilty[2] to involuntary manslaughter and the Commonwealth agreed to *nolle pros* the original charges. On August 7, 2014, the Commonwealth filed an amended bill of criminal information conforming to that agreement. On that same date, Appellant pled guilty to involuntary manslaughter. On October 9, 2014, the trial court sentenced Appellant to an aggravated range sentence of 18 to 36 months of imprisonment. At the sentencing hearing, Appellant objected to the term of incarceration arguing that the Commonwealth admitted that there were no aggravating circumstances in the case. He further argued that there was no evidence that he had manifested an indifference to the victim's life, an element of the offense of aggravated assault that was *nolle prossed*. The trial court denied relief and entered the sentencing order. This timely appeal followed.[3]

On appeal, Appellant presents the following issues for our review:

> 1. Did the [trial] court abuse its discretion in moving
>    Appellant's sentence into the aggravated range based

---

[2]  Appellant believed it was in his best interest to plead guilty, but did so while maintaining his innocence. **See** Appellant's Brief at 4, *citing* **North Carolina v. Alford**, 400 U.S. 25, 38 (1970) (holding "an individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting a crime."); **see also** N.T., 8/7/2014, at 10-11.

[3] On October 22, 2014, Appellant filed a notice of appeal. On the same day, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on November 5, 2014. On December 8, 2014, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

upon a finding that Appellant showed a 'manifest indifference to life' where no testimony was provided as to the events in question, the Commonwealth *nolle prossed* all charges having an intent element, and where the Commonwealth's proffer of underlying events in the case did not suggest anything which would indicate aggravating circumstances?

2. Was there any other evidence, outside of the [trial] court's finding that Appellant evidenced 'a manifest indifference to life' to support moving Appellant's sentence into the aggravated range?

Appellant's Brief at 3.[4]

Initially we note that Appellant's claims implicate the discretionary aspects of his sentence, which is not appealable as of right. ***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the trial court's discretion must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Id.*** (citation omitted).

---

[4] Appellant raised additional issues in his Rule 1925(b) statement, but concedes that he is only challenging the imposition of an aggravated range sentence on appeal. ***See*** Appellant's Brief at 3, n.1. Those additional, abandoned issues are thereby waived.

Here, Appellant preserved his claim at sentencing and by including it in his Rule 1925(b) statement. Appellant also filed a timely notice of appeal and included in his brief a statement pursuant to Pa.R.A.P. 2119(f), in which he claims that the trial court imposed an excessive sentence and failed to articulate its reasons for doing so. We have previously determined that an appellant raises a substantial question when he alleges that the trial court failed to state sufficient reasons on the record when imposing an aggravated range sentence. *Commonwealth v. Fullin*, 892 A.2d 843, 850 (Pa. Super. 2006). We have also determined that an appellant raises a substantial question when he alleges that the trial court, in imposing sentence, considered a charge that was *nolle prossed* as part of a plea agreement. *Commonwealth v. Miller*, 965 A.2d 276, 276 (Pa. Super. 2009). Thus, we turn to Appellant's claims.

Appellant's issues are interrelated so we will examine them together. In his first issue presented, Appellant contends that the trial court manifestly abused its discretion when it enhanced his sentence based upon charges that were *nolle prossed* as part of the guilty plea negotiation. Appellant's Brief at 10. More particularly, Appellant argues "the [trial] court, in imposing sentence, specifically found that [Appellant] evidenced a 'manifest indifference to life[,]' [thereby] adopting the specific language of the *nolle*

*prossed* charge of aggravated assault."[5] ***Id.*** at 12. Appellant maintains that the factual basis underlying the plea "is devoid of any mention of the type of strike, how many strikes, how quickly this event unfolded, and whether [Appellant] had any indication that the victim was unconscious." ***Id.*** Appellant posits that the Commonwealth acquiesced and allowed Appellant to maintain his innocence as part of his plea and, thus, he did not admit to "any of the factual circumstances as presented by the Commonwealth in its charging documents, or most importantly as suggested by the sentencing court." ***Id.*** (footnote omitted).

Next, Appellant claims that there was no other evidence to support an aggravated range sentence. Appellant argues that his prior record score and the impact of the victim's death on the victim's family are factors already taken into consideration under the sentencing guidelines. ***Id.*** at 16-17. Moreover, Appellant avers that there was no evidence that Appellant is a threat to the community, as set forth in the pre-sentence investigation (PSI) report. ***Id.*** at 17. As such, Appellant contends that there were "no factors upon which the [trial] court could have, without abusing its discretion, used

---

[5] In pertinent part, a person is guilty of aggravated assault if he: "(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances **manifesting extreme indifference** to the value of human life[.]" 18 Pa.S.C.A. § 2702(a)(1) (emphasis added).

to move the sentence into the aggravated range." *Id.* at 18. Accordingly, Appellant requests vacating his sentence. *Id.*

In reviewing a sentencing claim:

> We must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. An appellate court will not disturb the lower court's judgment absent a manifest abuse of discretion. In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion. Further, a sentence should not be disturbed where it is evident that the sentencing court was aware of sentencing considerations and weighed the considerations in a meaningful fashion.

*Miller*, 965 A.2d at 277 (internal citation omitted).

In formulating a sentence, "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of offense as it relates to the impact on life of the victim and on the community, and the rehabilitative needs of the defendant." *Id.*, *citing* 42 Pa.C.S.A. § 9721(b). "A court is required to consider the particular circumstances of the offense and the character of the defendant." *Id.* at 277-278 (citation omitted).

Furthermore,

> [42 Pa.C.S.A. §] 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S.A. § 9781(c). Under 42

Pa.C.S.A. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S.A. § 9721(b) is exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S.A. § 9781(c).

*Commonwealth v. Grace*, 2015 WL 6108065, at *3 (Pa. Super. 2015).

Additionally, we are mindful that when a sentencing court has the benefit of a PSI, we must presume that the sentencing judge was aware of, and duly considered, any character-related information contained therein. *Commonwealth v. Raven*, 97 A.3d 1244, 1254 n.12 (Pa. Super. 2014), *citing* *Commonwealth v. Devers*, 5546 A.2d 12 (Pa. 1988).

Finally, with regard to Appellant's contention that the trial court improperly relied upon the *nolle prossed* aggravated assault charge in fashioning its sentence, our decision in *Miller*, **supra**, is instructive. In that case, Miller pled guilty to third-degree murder after the Commonwealth agreed to *nolle pros* additional criminal charges including, *inter alia*, arson. Miller argued that the trial court abused its discretion when it considered the arson charge at sentencing. More specifically, Miller averred that the trial court's reference to "[t]he tragedy of the fire as well as the lives of [the] firefighters and police and everyone else that were risked in putting out that fire [was] something [the trial court] consider[ed] because [] there could

have been even more lives either injured or taken." ***Miller***, 965 A.2d at 279-280. Upon review in ***Miller***, we examined the trial court's rationale in imposing sentence, as stated on the record, and concluded:

> [the trial court] carefully reviewed the PSI and [three victim impact] letters presented, and considered many factors in imposing sentence, including: the seriousness of the offense; the situation that faced firefighters and police when they arrived at [the victim's] residence; the manner in which the murder of [the victim] impacted her family and friends and [Miller's] family; [Miller's] apparent unwillingness to accept responsibility for his actions; and [Miller's] misconduct while incarcerated. Contrary to [Miller's] assertion that the trial court improperly considered the charge of arson that was *nolle prossed* as part of the plea agreement, we do not find that the court's mere reference to the fact that the lives of firefighters and police were at risk due to [the victim's] residence being ablaze when these individuals arrived on the scene indicates that the court specifically considered the charge of arson and enhanced [Miller's] sentence based thereon. ***Cf.*** [***Commonwealth v.***] ***Stewart***, 867 A.2d [589,] 593 [(Pa. Super. 2005)] (trial court specifically indicated that it was sentencing the appellant in the aggravated range because of three (3) counts that were *nolle prossed*).

***Miller***, 965 A.2d at 280.

In this case, at the guilty plea hearing, while Appellant maintained his innocence, he stated he was "aware of the case that the Commonwealth would be prepared to present at trial." N.T., 8/7/2014, at 10. Appellant agreed the evidence against him was sufficient to convict him of the charge of involuntary manslaughter beyond a reasonable doubt. ***Id.*** at 13. Appellant further agreed that the facts would show that a co-defendant struck the victim and caused him to fall to the ground, fracturing the victim's

skull, and rendering him unconscious. *Id.* at 8. Appellant and his two co-defendants then struck the victim causing the victim's vena cava aorta to rupture. *Id.* Medical evidence showed "that the fractured skull and/or the ruptured aorta [] was the cause of death[.]" *Id.* Thus, the Commonwealth contended, "[t]he basis of the charge of involuntary manslaughter [was] the striking of [the victim] by [Appellant] []as a cause of the ruptured aorta and subsequent death as a result of that ruptured aorta." *Id.*

Just prior to sentencing, the trial court heard victim impact testimony from two of the victim's sisters and the victim's mother. N.T., 10/9/2014, at 15-21. At sentencing, the trial judge stated that he had considered the following factors in imposing Appellant's sentence:

> [] I have been provided with the [PSI report] and I have read and studied that document. I've considered in formulating a sentence, your age, the information about you and in the [PSI report]. I've also reviewed the sentencing guideline form[.]
>
> *         *         *
>
> I've considered all of your personal information, your educational background, your marital status. I've considered the nature of this offense, the affidavit of probable cause. I've considered the plea agreement. And the plea agreement essentially is that the Commonwealth would proceed only with this involuntary manslaughter charge and the remaining charges that were contained on the information, criminal homicide, aggravated assault, simple assault, recklessly endangering another person, these were not prosecuted in the case. That was the plea agreement.
>
> *         *         *

I've considered the statements of family members [of the victim] here in the courtroom as well as a statement [] that was provided to me and it was put into the [PSI report]. I've considered your prior criminal history and the evaluative history that was prepared by the Adult Probation Office. […T]he sentencing guideline form does reveal a standard range of sentence of three to 12 months. The mitigated range is restorative sanctions, which is probation. The aggravated range is 18 months which is six months added onto the standard range higher end.

As far as mitigating factors, I think that you do have a prior record score of zero. And [I take] that into account in imposing a sentence. However, I don't find it as a mitigating factor. I simply find it as something that needs to be computed in the guideline form. You had prior involvements. It's my understanding that you have a prior DUI and have a pending drug charge, although that may be disposed of. […] But, I'm not holding that against you. I'm just saying I don't find any mitigating factors because there have been prior involvements even though your prior record score is in fact a zero.

In computing a sentence, [the trial court] considers that this is a misdemeanor charge that [] you have pled to. And we went through at great lengths at the pleas that you entered your plea based upon the fact that was the only remaining charge.

That being said, [the trial court] also finds that the victim involved here was unconscious when the fatal blow was delivered. [The trial court] takes that as evidence of a manifest indifference to life. [The trial court] views the circumstances surrounding the killing of this victim as extreme. The victim was rendered unconscious by a skull fracture. But he was further victimized by you and others causing a ruptured aorta. In other words, an unconscious victim was beaten to death by three individuals.

All right. I've found a factual basis for the guilty plea to involuntary manslaughter as stated at the plea proceeding. After considering all of these factors, I find that you are in need of correctional treatment that can be provided most effectively by your commitment to an institution and that

        any lesser sentence would depreciate the seriousness of this
        crime.

*Id.* at 23-28.  The trial court then imposed an aggravated range sentence of 18 to 36 months of incarceration.  *Id.* at 28.

        In reviewing the totality of circumstances, we discern no abuse of discretion or error of law in imposing Appellant's sentence.  Initially we note that the sentencing court specifically stated that it was not considering the *nolle prossed* charges in fashioning sentence.  Similar to our decision in **Miller**, here, a mere passing reference to the language used in the aggravated assault statute does not indicate that the court specifically considered that charge in enhancing Appellant's sentence.  The trial court was required to consider the particular circumstances of the offense and Appellant's character in imposing sentence, which it did.  Furthermore, on the record at sentencing, the trial court specifically balanced the protection of the public, the gravity of offense as it relates to the impact on life of the victim and on the community, and the rehabilitative needs of the defendant under Section 9721.  The trial court determined that an aggravated sentence was appropriate because Appellant's conduct was extreme.  Appellant ganged up with two others to strike an unconscious victim, causing an injury that ultimately contributed to the victim's death.  As previously noted, the court heard victim impact testimony from the victim's family.  In its written opinion, the trial court described that impact as a "quite drastic effect that the victim's resultant death has caused on his family."  Trial Court Opinion, 12/8/2014, at 10.  Moreover, the trial court had the benefit of a PSI report

- 11 -

and, thus, we presume it was aware of, and duly considered, any character-related information contained therein. Based upon all of the foregoing, we conclude the trial court did not improperly rely upon the *nolle prossed* aggravated assault charge in sentencing Appellant. The trial court fashioned an individualized sentence for Appellant and clearly articulated its reasons on the record at sentencing. Hence, both of Appellant's appellate claims fail.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/14/2015</u>